IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-01177-CNS

B.R.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court for judicial review of the Social Security Administration Commissioner's (the "Commissioner's") decision denying Plaintiff B.R.'s application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XIV of the Social Security Act.[1] Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS in part and REVERSES in part the Commissioner's denial of benefits, and REMANDS for further analysis.

### I. BACKGROUND

B.R. was born on December 9, 1988. He was 28 years old at the alleged disability onset date of October 15, 2017 (*See, e.g.*, Administrative Record ("A.R.") at 12, 26). B.R. suffers from relapsing multiple sclerosis ("MS"), neuropathy, and bipolar disorder (*See, e.g.*, A.R. at 428, 534-35). B.R. began having symptoms of MS in 2011 (A.R. at 427). On October 5, 2017, an emergency

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff B.R. is identified by his initials only.

department physical examination showed that B.R. was "[s]tiff" with an "unsteady gait," and was unable to move his right arm well (*See* A.R. at 447). At that time, B.R. also described difficulty driving because he had trouble using his legs to operate his car brake (*See* A.R. at 448).

In May 2018, B.R. reported having MS flares approximately six times per day (A.R. at 421). These flares included tightness on his left side and spasms in his hands (*Id.*). In June 2018, B.R. reported experiencing episodes of extreme muscle tightness in the left side of his body associated with facial droop that was occurring more frequently (A.R. at 439). In September 2018, B.R. reported difficulty moving his lower extremities, chills, and pain (A.R. at 437). In a physical exam conducted in September 2018, B.R. exhibited abnormal muscle tone, coordination, and gait (A.R. at 438). Due to an MS flare, B.R. went to the emergency room on May 10, 2019 (A.R. at 433). On August 24, 2019, B.R. sought treatment due to an exacerbation of his MS (*See* A.R. at 431). At that time, he reported muscle stiffness and joint pain of the right upper and lower extremities, left ankle, and left foot (*See id.*).

B.R. filed his claim for SSI and DIB on August 8, 2019, alleging that his disability began on October 15, 2017 (*See*, *e.g.*, A.R. at 10). B.R. was subsequently seen for physical examinations by various medical professionals (*See, e.g.*, A.R. at 556-59; 572-73). On October 4, 2019, Dr. Richard B. Madsen Ph.D., conducted a consultative psychological examination of B.R. (A.R. at 533). Dr. Madsen opined that B.R. had marked impairment in his ability to perform complex and detailed tasks on a consistent basis over an extended period (A.R. at 535). In addition, Dr. Madsen concluded that B.R. had moderate to marked impairment in performing work activities on a consistent basis; dealing with the usual stresses of a work environment; and completing a normal workday or work week "depending on the complexity of the work involved" and the "stress level

2

of the work environment" (A.R. at 535-36). Dr. Madsen based these conclusions in part on objective tests regarding B.R.'s arithmetic and memory skills (A.R. at 534-35).

B.R.'s SSI and DIB claims were initially denied on October 7, 2019 (*See, e.g.*, A.R. at 10). B.R.'s claims were denied upon reconsideration on December 19, 2019 (*See, e.g. id.*). B.R. then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing regarding B.R.'s claim in November 2020 (A.R. at 10). The ALJ issued a written order denying B.R.'s application, concluding that B.R. had not been under a disability within the meaning of the Social Security Act since October 15, 2017 (A.R. at 11). B.R. requested review of the ALJ's decision, which the Social Security Appeals Council denied in March 2021 (*See* A.R. 1-3). B.R. timely sought review in this Court (ECF No. 1).

## II. LEGAL STANDARD AND STANDARD OF REVIEW

An individual is disabled under the Social Security Act if they are unable to do "any substantial gainful activity" due to any medically determinable physical and/or mental impairment that can be expected "to last for a continuous period of not less than 12 months." *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). An individual bears the initial burden of establishing his disability. *See id.* at 1062. To determine whether an individual is disabled, courts use a five-step, sequential analysis that considers whether the individual:

(1) is currently engaged in "substantial gainful activity";

(2) has a "severe" impairment or impairments;

(3) the impairment or impairments equals one of the impairments listed in the appendix of the relevant disability regulation;

(4) the impairment or impairments prevent the individual from doing their past work; and

(5) has the "residual functional capacity" ("RFC") to perform other work in the national economy

3

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). Determination that an individual is or is not disabled at any step is conclusive. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). If the individual is not considered disabled at step three, but has satisfied their burden at steps one, two, and four, the burden shifts to the Commissioner to show the individual has the RFC to perform other work in the national economy. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

The Court reviews the Social Security Commissioner's decision to determine whether the factual findings are supported by substantial evidence and the correct legal standards were applied. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that is sufficient, based on the entire record, to support the ALJ's factual determinations. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2022). The threshold for this "evidentiary sufficiency is not high," and requires only enough evidence that a reasonable person might accept as adequate to support the ALJ's decision. *Id.* Nonetheless, a decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (quotation omitted). Under the substantial evidence standard, the Court cannot reweigh evidence or "retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

## III. ANALYSIS

Having reviewed the administrative record, the parties' briefs, and relevant legal authority, the Court affirms in part and reverses in part the Commissioner's denial of benefits. B.R. seeks reversal or remand of the Commissioner's decision on two grounds, which the Court considers in turn.

### A. Consistency of B.R.'s Testimony and Medical Evidence

B.R. first contends that the ALJ erred when evaluating the "consistency factors" regarding B.R.'s RFC (*See* ECF No. 13 at 7). Essentially, B.R. argues that the ALJ did not give sufficient

4

reasons for discounting B.R.'s testimony in determining his RFC, as well as that the ALJ's RFC determination "failed to address" all of B.R.'s side effects (*See id.* at 7-10). The Court respectfully disagrees with B.R. that the ALJ erred in finding that B.R. had the RFC to perform a range of light work.

An individual is not disabled if they have an RFC that permits them to perform past work. *See, e.g.*, *Fischer-Ross*, 431 F.3d at 731; *see also* 20 C.F.R. § 404.1520(e), (f). In determining an individual's RFC, an ALJ must consider whether the individual's statements regarding his limitations are consistent with medical evidence in the record. *See, e.g., Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (citing SSR 16-3P). Here, the ALJ found that B.R. had the RFC to perform a range of light work (*See* A.R. at 17).

In reaching this conclusion, the ALJ analyzed B.R.'s statements regarding his own limitations. For example, the ALJ discussed excerpts from the administrative record in which B.R. alleged he was "unable to do heavy lifting," as well as excerpts from the ALJ's hearing where B.R. testified that he had memory problems and episodes where "his body would just fall asleep" (A.R. at 18; *see also id.* at 19-20). The ALJ then analyzed medical evidence in the record regarding B.R.'s limitations. For example, the ALJ discussed B.R.'s June 2020 thoracic spine MRI which showed "no significant change in the thoracic spinal demyelinating disease" (A.R. at 20, 23). The ALJ also discussed the conclusions of Doctors Pratt and Barrett, who found that B.R. could lift and/or pull twenty pounds occasionally, stand and/or walk six out of eight hours in a workday, and frequently kneel (A.R. at 23). According to the ALJ, Andrea Szporn, Ph.D., and Mark Suyeishi, Psy.D., reached similar conclusions—they both determined that B.R. could perform work so long as it did not involve "significant complexity or judgment" (A.R. at 24). The ALJ also concluded additional medical evidence, including the opinions of Doctors Estevez and Torrent (*See* A.R. at

5

25). The ALJ ultimately concluded B.R.'s statements concerning the "intensity, persistence, and limiting effects" of his symptoms were "not entirely consistent" with the medical evidence (A.R. at 18).

The Commissioner urges affirmance on the grounds that, in concluding that B.R.'s subjective claims were not consistent with the medical evidence, the ALJ properly considered medical evidence *and* B.R.'s own subjective testimony regarding his symptoms (*See* ECF No. 16 at 12). Therefore, the ALJ applied the correct legal standard because—after performing an "extensive discussion" of the medical evidence and B.R.'s testimony—the ALJ provided a sufficiently thorough explanation for why B.R.'s testimony was inconsistent with the medical evidence (*See id.* at 12-16). The Court agrees. In determining that B.R.'s testimony was not consistent with the medical evidence, the ALJ properly considered B.R.'s testimony and sufficiently explained his reasoning. *See Bainbridge v. Colvin*, 618 F. App'x 384, 388 (10th Cir. 2015) (concluding ALJ did not err when considering a plaintiff's description of daily activities because the ALJ "used them as one part of her adverse credibility finding" as required by relevant regulations and case law); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (concluding that ALJ must discuss evidence supporting his decision as well as evidence "he chooses not to rely upon" and "significantly probative evidence" he rejects). Accordingly, substantial evidence supports the ALJ's finding that B.R.'s testimony was inconsistent with the record's medical evidence. *See Biestek*, 139 S. Ct. at 1154 (concluding that "substantial evidence" is evidence that is sufficient to support ALJ's factual determinations); *see also Casias*, 933 F.2d at 800-01 (concluding courts do not "reweigh the evidence" and only determine whether substantial evidence supports agency decision).

### B. Dr. Madsen's Opinion

B.R. argues that the ALJ erred in finding the medical opinion of Dr. Madsen was unpersuasive on the grounds that Dr. Madsen's examination of B.R. was based on B.R.'s subjective testimony and that it was inconsistent with other medical evidence (*See* ECF No. 13 at 11). The ALJ erred, B.R. contends, because the ALJ did not discuss that Dr. Madsen performed objective testing of B.R and the results of Dr. Madsen's objective tests (ECF No. 13 at 12). The Commissioner contends that substantial evidence supports the ALJ's finding that Dr. Madsen's opinion was unpersuasive because Dr. Madsen's own opinion was based on B.R.'s subjective testimony and not supported by the medical evidence (*See* ECF No. 16 at 16-17). The Court agrees with B.R.

In assessing B.R.'s RFC, the ALJ concluded that Dr. Madsen's medical opinion was not persuasive because his opinion was "primarily supported" by B.R.'s "subjective reporting of his own symptoms, rather than objective testing" (A.R. at 24). The ALJ further discounted Dr. Madsen's opinion because he "only examined [B.R.] on one occasion," his opinion was not consistent with his own findings, and claimed that Dr. Madsen's opinion was inconsistent with medical evidence (*See* A.R. at 24-25). However, the ALJ's assessment of Dr. Madsen's opinion does not account for the entirety of Dr. Madsen's evaluation. For example, in evaluating B.R.'s "mental status," Dr. Madsen had B.R. perform various objective arithmetic and memory exercises (*See* A.R. at 534). During these exercises, Dr. Madsen found that B.R.'s ability to do "arithmetic functions" was "impaired" and that B.R. had "difficulty doing simple arithmetic calculations in his head" (AR at 534-35). Dr. Madsen made explicit reference to the outcome of these exercises in his "conclusions and recommendations" (A.R. at 535). The ALJ makes no reference to these

exercises or Dr. Madsen's assessment of B.R.'s intelligence or memory in his evaluation of Dr. Madsen's medical opinion (*See* A.R. at 24-25).

The Court agrees with B.R. that the outcome of Dr. Madsen's objective tests is probative of an inability to engage in "full-time competitive employment" (ECF No. 13 at 11). Therefore, the ALJ was required to discuss Dr. Madsen's objective tests—and his conclusions regarding his objective tests—in evaluating Dr. Madsen's medical opinion. *See Clifton*, 79 F.3d at 1010 (determining that ALJ must also discuss evidence he "chooses not to rely upon" or "significantly probative" evidence he rejects). The ALJ failed to do so (*See* A.R. at 24-25). An ALJ may not "pick and choose" among medical reports, using portions of "evidence favorable" to the determination "while ignoring" or "downplay[ing] evidence to support [his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (quotations omitted); *see also id.* (concluding ALJ erred by relying on "portions of medical reports" while "ignoring other portions of the same reports" that "confirmed" physician's observations and conclusions regarding claimant's limitations because ALJ "may not pick and choose" among medical reports).

The ALJ impermissibly "cherry-picked" evidence from Dr. Madsen's report. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." (citations omitted)). As such, the ALJ did not apply the correct legal standard in assessing Dr. Madsen's medical opinion. *Cf. Winfrey*, 92 F.3d at 1019 (concluding that ALJ's failure to apply proper legal standard is grounds for reversal); *Pisciotta*, 500 F.3d at 1075 (courts review ALJ's findings to ensure correct legal standards were applied). For this reason, remand is appropriate. *See Bryant*, 753 F. App'x at 643 (remanding where ALJ failed to apply correct legal standard in "evaluating the medical evidence" and to reconsider weight to be given to discounted

physician's opinion "after conducting a more robust analysis of *all* the medical evidence" (emphasis added) (citation omitted)). On remand, the ALJ must reconsider the weight to be given to Dr. Madsen's medical opinions after conducting a "more robust analysis" of Dr. Madsen's entire medical evaluation, including his objective testing of B.R. and his conclusions drawn from that testing. *See id.*

## IV. CONCLUSION

For the reasons set forth above, the Court AFFIRMS in part and REVERSES in part the Commissioner's decision denying B.R. disability insurance benefits, and REMANDS for further proceedings consistent with this order.

DATED this 9th day of November 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge